STATE OF NORTH CAROLINA EX REL. COMMISSIONER OF INSUR-
ANCE v. NORTH CAROLINA AUTOMOBILE RATE ADMIN-
ISTRATIVE OFFICE, NATIONWIDE MUTUAL INSURANCE
COMPANY, STATE FARM MUTUAL AUTOMOBILE INSUR-
ANCE COMPANY, ALLSTATE INSURANCE COMPANY, AETNA
CASUALTY & SURETY COMPANY, HARTFORD ACCIDENT &
INDEMNITY COMPANY, GREAT AMERICAN INSURANCE
COMPANY, LUMBERMENS MUTUAL CASUALTY COMPANY,
UNITED STATES FIDELITY & GUARANTY COMPANY, IN-
SURANCE COMPANY OF NORTH AMERICA, GOVERNMENT
EMPLOYEES INSURANCE COMPANY, LIBERTY MUTUAL IN-
SURANCE COMPANY, UNITED STATES FIRE INSURANCE
COMPANY, IOWA NATIONAL MUTUAL INSURANCE COM-
PANY, ST. PAUL FIRE & MARINE INSURANCE COMPANY,
THE SHELBY MUTUAL INSURANCE COMPANY, HARLEYS-
VILLE MUTUAL INSURANCE COMPANY, UNIGARD MUTUAL
INSURANCE COMPANY, IOWA MUTUAL INSURANCE COM-
PANY, PENNSYLVANIA NATIONAL MUTUAL CASUALTY IN-
SURANCE COMPANY, RELIANCE INSURANCE COMPANY,
AETNA INSURANCE COMPANY, AMERICAN MOTORISTS
INSURANCE COMPANY, ROYAL INDEMNITY COMPANY,
FIREMAN'S FUND INSURANCE COMPANY, INDIANA LUM-
BERMENS MUTUAL INSURANCE COMPANY, CONTINENTAL
CASUALTY COMPANY, AMERICAN INSURANCE COMPANY,
NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE
COMPANY, INTEGON GENERAL INSURANCE CORPORATION,
AND INTEGON INDEMNITY CORPORATION

No. 7310INS629

(Filed 10 October 1973)

1. Insurance § 79.1— automobile liability rates — classification plan —
order unsupported by evidence and findings

Order of the Commissioner of Insurance adopting a new private
passenger automobile liability insurance classification plan and rate
structure was unsupported by material and substantial evidence and
was not based on appropriate findings of fact. G.S. 58-9.6(b)(5);
G.S. 58-9.4.

2. Insurance § 79.1— automobile liability rate classifications — statutory
power

In exercising the power to establish new automobile liability rate
classifications and new rate structures, the Commissioner of Insurance
is limited to the authority delegated to him by statute.

---

Comr. of Insurance v. Automobile Rate Office

---

**3. Insurance § 79.1— automobile liability rates — suspension of rates approved by previous Insurance Commissioner**

The Commissioner of Insurance had no authority to suspend or disapprove automobile liability insurance rates which had been duly approved and ordered into effect by his predecessor in office without giving notice, conducting a hearing and making appropriate findings of fact as required by G.S. 58-248.1.

APPEAL by the North Carolina Automobile Rate Administrative Office and member companies of that office from orders of the Commissioner of Insurance filed 17 and 19 April 1973.

Among other things, the orders: abolished all existing classification plans for private passenger automobile liability insurance; abolished the existing Safe Driving Insurance Plan created to establish rate which would distinguish between classes of drivers having safe driving records and those having a record of chargeable accidents and traffic violations; abolished the existing private passenger automobile insurance rates schedule; ordered a new classification plan under which all applicants for minimum limits liability insurance would pay the same base rate, with the provision that convictions for violations of certain of the criminal laws dealing with the use and operation of motor vehicles would result in premium surcharges in the amount set out in the order and specifically directed that those rate changes ordered on 4 December 1972 by his predecessor in office not be placed into effect until the new rates and classification plans are implemented and followed.

*Attorney General Robert Morgan by Charles Lloyd, Assistant Attorney General and Isham B. Hudson, Jr., Staff Attorney for the North Carolina Insurance Department, for the Commissioner of Insurance.*

*Allen, Steed and Pullen by Arch T. Allen and Lucius W. Pullen; Broughton, Broughton, McConnell & Boxley by John D. McConnell, Jr.; Sanford, Cannon, Adams & McCullough by Allen Adams; Young, Moore & Henderson by Charles H. Young, attorneys for defendant appellants.*

VAUGHN, Judge.

A comprehensive review of the procedures for insurance rate making in this State is not necessary on this appeal. For analysis of the relevant statutes see *In re Filing by Automobile Rate Office*, 278 N.C. 302, 180 S.E. 2d 155, and *In re Filing by Fire Insurance Rating Bureau*, 275 N.C. 15, 165 S.E. 2d 207.

The North Carolina Automobile Rate Administrative Office is a bureau charged with, among other things, the responsibility of promulgating liability insurance classification plans and promulgating and proposing liability insurance rates based on those classifications. G.S. 58-246. The rates and classifications so promulgated must be submitted to the Commissioner of Insurance for approval before they can be put into effect. The Commissioner is required to approve proposed changes in rates and classifications to the extent necessary to produce rates and classifications which are reasonable, adequate, not unfairly discriminatory and in the public interest. The statute provides that "[p]roposed rates shall not be deemed unreasonable, inadequate, unfairly discriminatory or not in the public interest, if such proposed rates make adequate provision for premium rates for the future which will provide for anticipated loss and loss adjustment expenses, anticipated expenses attributable to the selling and servicing of the line of insurance involved and a provision for a fair and reasonable underwriting profit." G.S. 58-248. If the Commissioner determines, after notice and hearing, that the rates charged or filed on any class of risk "are excessive, inadequate, unreasonably, unfairly discriminatory, or otherwise not in the public interest, or that a classification or classification assignment is unwarranted, unreasonable, improper or unfairly discriminatory," he is required to direct that such rates, classifications or classification assignments be altered or revised to produce rates, classifications or classification assignments which are reasonable, adequate, not unfairly discriminatory and in the public interest. G.S. 58-248.1.

On 2 March 1973 the Commissioner of Insurance notified the North Carolina Automobile Rate Administrative Office of a hearing to be held on 9 March 1973. A copy of the notice was published in two Raleigh newspapers on 3 March 1973. In pertinent part the notice is as follows: "Notice is hereby given that a Public Hearing will be held . . . for the purpose of reviewing the present rating classification system for private passenger automobile liability insurance and to hear all interested persons concerning changes, if warranted, in order to effect rating classifications for North Carolina which are adequate, reasonable and not unfairly discriminatory and otherwise in accordance with law."

The present Commissioner of Insurance succeeded former Commissioner of Insurance, Edwin S. Lanier, on 5 January 1973. Commissioner Lanier had conducted a series of hearings be-

ginning 20 October 1971 and ending on 23 May 1972. The stated purposes of the Lanier hearings were to consider changes deemed to be required by legislation enacted by the 1971 General Assembly including G.S. 58-248.9 which directed the Commissioner to adopt a rate classification plan called "a 260 Plan rate classification" or an appropriate modification of that plan; amendments to G.S. 58-248.8 which requires establishment of a safe driver reward plan that "distinguishes between classes of drivers having safe-driving records and those having a record of chargeable accidents, a record of convictions of major traffic violations; a record of a series of minor traffic violations; or a combination thereof; and which plan will provide for automobile property damage and bodily injury insurance premium differentials between such classes of drivers." The amendments further directed the Commissioner of Insurance to "maintain a Safe Driver Reward Plan which will balance the additional premium realized from surcharges assessed against drivers having other than safe-driving records with discounts allowed to those drivers having safe driver records." No order was filed as a result of these hearings prior to the time Commissioner Lanier left office. The recorded transcript and exhibits of the Lanier hearings were introduced at the hearing conducted by Commissioner Ingram on 9 March 1973. Witnesses were heard, who, in general, offered evidence as to the merits of rate classification plans more refined than the one presently used, such as the standard "260" plan and the modification of that plan proposed by the North Carolina Automobile Rate Administrative Office in January 1972. The hearing was recessed until 16 March 1973 when one witness was heard in connection with the relationship between territory rate classifications and the availability of insurance in the voluntary market. Other exhibits were introduced and the hearing was adjourned. On 17 and 19 April the Commissioner of Insurance filed the orders which are the subject of this appeal.

[1, 2] In our opinion the orders must be reversed for the reason that they are "unsupported by material and substantial evidence in view of the entire record. . ." as required by G.S. 58-9.6(b)(5) and not based on appropriate findings of fact as required by G.S. 58-9.4. Appellees concede that no evidence was received relative to the merits of the new classification plan and rate structure ordered to be placed into effect. The plan was not placed in the record during any of the proceedings before the Commission. The plan was first seen as an exhibit attached to

the Commission's order filed 17 April 1973, the hearings having been adjourned on 16 March 1973. Thus, no member of the public or the appellants have had notice or opportunity to be heard or offer evidence as to the merits of the plan. Indeed, in his brief, the Commissioner of Insurance takes the view that he was nor required to give notice of the proposed plan and that appellants were not entitled to know what the plan was or how it was to be instituted prior to the time that it was ordered into effect. The Commissioner's argument is that, in establishing a new rate classification plan, he was acting in a legislative capacity and that he was acting for the Legislature. The parties have not raised the serious question of whether there has been a lawful delegation, with proper standards for the guidance of the Commissioner, and such insurance rate-making authority as is assumed to rest in the Legislature. We note only that the stated formula that the Commissioner shall approve rates which are "reasonable, adequate, not unfairly discriminatory and in the public interest" does not appear to amplify the minimum standards that are constitutionally imposed on the Legislature itself. It is sufficient to say that, in exercising such power to establish new rate classifications and new insurance rates as may have been lawfully delegated to him by statute, the Commissioner is limited to the statutory authority so delegated. The applicable statutes require notice and hearing. It is only after notice and hearing that the courts can review an order to determine whether the Commissioner's findings are supported by material and substantial evidence. Administrative declarations, however sound and noble their purpose may be, are not findings of fact upon which the Courts can exercise their duty of judicial review. The merits, therefore, of the classification plan ordered by the Commissioner are not before us and we do not reach the question of his authority to, *sua sponte,* initiate, promulgate and order that plan into effect.

[3] We comment briefly on that part of the supplementary order purporting to suspend the rate changes ordered by Commissioner Lanier on 4 December 1972 as a result of the North Carolina Automobile Rate Administrative Office filing, pursuant to G.S. 58-248, of 1 July 1971. After two appeals to this court the order was affirmed in *Commissioner of Insurance v. Attorney General,* 18 N.C. App. 23, 195 S.E. 2d 572, *cert. den.,* 283 N.C. 585, 196 S.E. 2d 811. Among other things, in that order Commissioner Lanier directed the North Carolina Automobile Rate Administrative Office to place the new rates into effect

at the earliest possible date, subject to such modifications as might be necessary by reason of federal price control regulations. The present Commissioner of Insurance was without authority to suspend or disapprove the rates which had been duly approved and ordered into effect, in the absence of notice, hearings and appropriate findings of fact, all as required by G.S. 58-248.1. If, after proper notice and hearing, the Commissioner determines that existing or previously authorized rates are to be changed, any party to the proceeding may appeal and such appeal operates as a stay of the Commissioner's order until the questions raised by the appeal are determined. G.S. 58-9.5 (10).

For the reasons stated, the orders of the Commissioner of Insurance which are the subject of this appeal must be reversed and set aside.

Reversed and vacated.

Judges BRITT and PARKER concur.